**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-00704-CMA-KMT

LAUREN P. ANDERSON, and
WILLIAM W. ANDERSON, III,

     Plaintiffs,

v.

HCA-HEALTH ONE LLC, a Colorado limited liability company,
   d/b/a THE MEDICAL CENTER OF AURORA, and also
   d/b/a CENTENNIAL MEDICAL PLAZA,
DAVID C. VAN PELT, M.D.,
BROOKS W. LONG, M.D.,
CRITICAL CARE & PULMONARY CONSULTANTS, P.C.,
   a Colorado professional corporation,
CHRISTOPHER G. McLAUGHLIN, M.D.,
SALLIE B. CLARK, M.D., and
SURGICAL CONSULTANTS OF AURORA, P.C., a Colorado professional corporation,

     Defendants.

---

**OPINION AND ORDER REGARDING DEFENDANT
HCA-HEALTH ONE, LLC'S MOTION TO DISMISS**

---

     This matter is before the Court on Defendant HCA-HealthONE LLC's Motion to Dismiss (Doc. # 66). This is a medical malpractice lawsuit. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 (diversity). For the reasons stated below, the Court grants Defendant HCA-HealthONE LLC's Motion to Dismiss insofar as it relates to paragraphs 36(b) through 36(h), and denies it insofar as it relates to paragraph 36(a).

## I. BACKGROUND

**A.   FACTS**

For purposes of Defendant's Motion, all well-pleaded facts in the Complaint are assumed to be true, and all reasonable inferences therefrom are drawn in a light most favorable to Plaintiff. Accordingly, the following facts taken directly from the Complaint (Doc. # 1) must be taken as true:

On the mid-afternoon of April 17, 2007, while traveling with her husband in Colorado, Plaintiff Lauren P. Anderson ("Ms. Anderson") experienced a sudden and abrupt onset of severe abdominal pain, which she described as the worst pain of her life.

Within three hours of the initial onset of that pain, she and her husband, Plaintiff William W. Anderson, III ("Mr. Anderson"), arrived at Centennial Medical Plaza (an emergency medicine facility owned and operated by Defendant HCA-HealthOne) where she received initial medical evaluation and treatment for her complaints.

That initial evaluation included findings of frequent diarrhea, a white blood cell count of 20,200, and a hematocrit percentage of 34.1%. Late that same evening Ms. Anderson was admitted directly from that emergency medicine facility to The Medical Center of Aurora, a magnet hospital owned and operated by Defendant HCA-HealthOne. As stated in the emergency facility medical chart, a principal purpose of the transfer of Ms. Anderson to the magnet hospital was "to [rule out] ischemic bowel."

Defendant HCA-HealthOne and its agents and employees assigned Ms. Anderson to the care of Defendants Van Pelt, Long, and Critical Care. Defendant Van Pelt, who wrote and signed the admitting History and Physical Report, obtained the history in part from Mr. Anderson, at a time when Ms. Anderson was asleep after receiving Fentanyl and unable to give her own medical history. In that History, Defendant Van Pelt stated "ALLERGIES: IV IODINE CAUSED A LOCAL INFLAMMATION AND A RASH WHEN IT WAS GIVEN FOR A PROCEDURE." (Block letters in original.)

The following day, April 18, 2007, Defendants Van Pelt, Long, and Critical Care ordered a colonoscopy on Ms. Anderson. That same day a gastroenterologist performed that colonoscopy, during which he took six (6) biopsy specimens from the mucosa of the cecum.[1] A pathologist tested all of the biopsy specimens and reported the following day, April 19, 2007, that all six (6) pieces of colonic mucosa showed varying degrees of necrosis (i.e., dead tissue). The pathologist concluded his written report by stating: "The differential diagnosis still includes ischemic change[2] or possibly an infectious process. Clinical correlation is needed."

---

[1] Mucosa is the innermost layer of intestinal tissue, i.e., the tissue that surrounds the hole ("lumen") that food uses to pass through the small and large intestines. The cecum is that section of bowel that connects the ascending colon and the rest of the large intestine to the small intestine.

[2] "Ischemic change" means changes to the mucosa caused by a lack of blood oxygen flow.

The same day as the pathologist's report, April 19, 2007, Defendants Long and Critical Care ordered a CT scan (without using contrast fluid) of Ms. Anderson's abdomen for "Abdominal pain."  Defendants Friedland and Radiology Imaging conducted that scan and thereupon reported that "[t]he findings would indicate an ileus rather than obstruction."  No finding was made as to ischemic bowel.

By early the following morning, April 20, 2007, Plaintiff Lauren P. Anderson's white blood cell count had risen to 28,900 and her hematocrit percentage had fallen to 31.5%.

That same day, April 20, 2007, Defendants Kaminska and Critical Care ordered another CT scan (without using contrast fluid) of Plaintiff Lauren P. Anderson's abdomen, this time for "Lower abdominal pain and bloody diarrhea."  Defendant McLaughlin and Radiology Imaging conducted that scan and thereupon reported: "Evidence of chronic ileocecal and very subtle acute jejunal inflammation.  These findings, along with the clinical history of lower abdominal pain and bloody diarrhea[,] make Crohn's disease most likely." No finding was made as to ischemic bowel.

After almost three full days of in-hospital examination and treatment, Defendants Van Pelt, Long and Critical Care, the physicians managing Ms. Anderson's in-hospital care, still did not have a definitive diagnosis that explained their patient's acute severe symptoms.  As of late that same day, April 20, 2007, Defendants Van Pelt, Long and Critical Care called upon Defendants Clark and Surgical Consultants for a surgical consultation.  Late that same evening, April 20, 2007, Defendants Clark and Surgical

4

Consultants conducted a diagnostic laparoscopy upon Ms. Anderson with a post-operative diagnosis of "No obvious intraabdominal abnormalities."

The following morning, April 21, 2007, Ms. Anderson checked herself out of The Medical Center of Aurora (Defendant HCA-HealthOne's magnet hospital) against the advice of that hospital's staff and physicians. That same day, April 21, 2007, both Mr. and Ms. Anderson flew home to Louisiana where Ms. Anderson sought immediate examination and treatment from a gastroenterologist, who admitted Ms. Anderson to a Louisiana hospital on April 22, 2007. At the time of her admission to the Louisiana hospital, Ms. Anderson's white blood cell count was 36,000 and her hematocrit percentage was 31.4%.

On April 23, 2007, Ms. Anderson underwent an exploratory laparotomy of her abdomen that found a mesenteric infarction with gangrene and ischemic necrosis (*i.e.*, tissue death from lack of blood oxygen) of the small bowel requiring surgical removal of ninety (90) inches of her small intestine and also of her ileocecal valve and her cecum, leaving her with eighteen (18) inches of small intestine and less than all of her ascending colon. Two days later, on April 25, 2007, Ms. Anderson underwent a second laparotomy, this time with anastomosis (*i.e.*, direct connection) of her jejunum (the only remaining part of her small intestine) to what was left of her ascending colon. Ms. Anderson remained a patient in the Louisiana hospital for fourteen (14) days before being discharged on May 8, 2007.

## B.    PROCEDURAL HISTORY

Plaintiffs filed their Complaint in this case on March 30, 2009 (Doc. # 1). Defendant HCA-HealthONE LLC filed its Motion to Dismiss on August 6, 2009 (Doc. # 66), Plaintiffs responded on August 21, 2009 (Doc. # 75), and Defendant replied on September 2, 2009 (Doc. # 79).

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted. Fed.R. Civ.P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

The Supreme Court recently retired "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), abrogated by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court replaced the *Conley* standard with the new *Twombly* standard,

which "prescribed a new inquiry for [courts] to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1974). The Court explained that "a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *Id.* (internal citation and brackets omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Id.*

### III.  ANALYSIS

Plaintiff's Complaint alleges "negligence and medical malpractice" against Defendant HCA-HealthONE, LLC. Specifically, paragraph 36 of the Complaint states:

36.    Defendant HCA-HealthOne LLC, a Colorado limited liability company maintaining its principal place of business in Colorado, committed actionable negligence and medical malpractice by:

  a.  Accepting Plaintiff Lauren P. Anderson as a patient without having the necessary staff, equipment and facility to diagnose and treat her appropriately;

  b.  Referring and assigning Plaintiff Lauren P. Anderson to physicians inadequate for and unable to provide the examinations and treatments her medical condition required;

  c.  Failing to refer and assign Plaintiff Lauren P. Anderson directly to one or more gastroenterologists as her principal managing physician or physicians;

  d.  Failing to have in place or, in the alternative, to enforce and apply protocols and procedures for confirming scientifically or otherwise

that a patient is in fact allergic to iodine contrast fluid and, if so, the true degree and severity of any allergic reaction to iodine contrast fluid;

e. Failing to have in place or, in the alternative, to enforce and apply protocols and procedures for ensuring that managing physicians and radiologists consult with one another on difficult cases before the managing physicians order, and the radiologists unquestioningly perform, radiological diagnostic procedures;

f. Failing to have in place or, in the alternative, to enforce and apply protocols and procedures requiring gastroenterological consultations and care for patients presenting with gastroenterological complaints;

g. Failing to have in place or, in the alternative, to enforce and apply protocols and procedures for ensuring that surgeons performing exploratory surgery review the patient's entire medical chart in advance and take all steps during that surgery to rule out all items in the patient's differential diagnosis; and

h. Any other acts or omissions that subsequent discovery herein might reveal.

According to the "corporate practice of medicine" doctrine recognized in Colorado, entities may not be held vicariously liable for the negligence of their employed or contracted physicians because, as a matter of law, they are unable to control the medical practice of those physicians. Colo. Rev. Stat. § 12-36-117(1)(m); Colo. Rev. Stat. § 25-3-103.7; *Hall v. Frankel*, 190 P.3d 852, 861 (Colo. App. 2008). Under this doctrine, a corporation that employs a physician may not interfere with the physician's independent medical judgment. *See Estate of Harper v. Denver Health & Hosp. Auth.*, 140 P.3d 273, 278 (Colo. App. 2006). However, under the special conduct exception, a hospital may be liable when it commits independent acts of negligence. *Id.* at 275-276; *Moon v. Mercy Hosp.*, 150 Colo. 430, 433, 373 P.2d 944, 945.

Most of the allegations against Defendant HCA-HealthONE are based on vicarious liability (paragraphs 36(b) through 36(g)). However, paragraph 36(a) alleges that Defendant HCA-HealthONE, LLC is negligent for "[a]ccepting Plaintiff Lauren P. Anderson as a patient without having the necessary staff, equipment and facility to diagnose and treat her appropriately." This statement alleges independent acts of negligence on the part of Defendant HCA-HealthONE, LLC.

Based on the foregoing, this Court finds that the Complaint is legally sufficient to state a claim for which relief may be granted only as to paragraph 36(a).

## IV.  CONCLUSION

Based on the foregoing, the Court ORDERS that Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. # 66) is GRANTED insofar as it relates to paragraphs 36(b) through (h), and DENIES it insofar as it relates to paragraph 36(a).

DATED:  December __15__, 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge