**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-00704-CMA-KMT

LAUREN P. ANDERSON, and
WILLIAM W. ANDERSON, III,

    Plaintiffs,

v.

HCA-HEALTHONE LLC, a Colorado limited liability company,
   d/b/a THE MEDICAL CENTER OF AURORA,
DAVID C. VAN PELT, M.D.,
BROOKS W. LONG, M.D.,
CRITICAL CARE & PULMONARY CONSULTANTS, P.C.,
   a Colorado professional corporation,
CHRISTOPHER G. MCLAUGHLIN, M.D., and
SALLIE B. CLARK, M.D.

    Defendants.

---

**OPINION AND ORDER REGARDING DEFENDANT CRITICAL CARE &
PULMONARY CONSULTANTS, P.C. MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO F.R.C.P 12(c)**

---

This is a medical malpractice lawsuit. This matter is before the Court on Defendant Critical Care & Pulmonary Consultants, P.C.'s Motion for Judgment on the Pleadings (Doc. # 64). Jurisdiction is proper pursuant to 28 U.S.C. § 1332 (diversity). For the reasons stated below, the Court GRANTS Critical Care & Pulmonary Consultants, P.C.'s Motion for Judgment on the Pleadings.

## I. BACKGROUND

**A.   FACTS**

For purposes of Defendant's Motion, all well-pleaded facts in the Complaint are assumed to be true, and all reasonable inferences therefrom are drawn in a light most favorable to Plaintiff. Accordingly, the following facts taken directly from the Complaint must be taken as true:

On the mid-afternoon of April 17, 2007, while traveling with her husband in Colorado, Plaintiff Lauren P. Anderson experienced a sudden and abrupt onset of severe abdominal pain, which she described as the worst pain of her life.

Within three hours of the initial onset of that pain, she and her husband, Plaintiff William W. Anderson, III, arrived at Centennial Medical Plaza where she received initial medical evaluation and treatment for her complaints.

That initial evaluation included findings of frequent diarrhea, a white blood cell count of 20,200, and a hematocrit percentage of 34.1%.

Late that same evening Plaintiff Lauren P. Anderson was admitted directly from that emergency medicine facility to The Medical Center of Aurora, a magnet hospital owned and operated by Defendant HCA-HealthOne.

As stated in the emergency facility medical chart, a principal purpose for transferring Plaintiff Lauren P. Anderson to the magnet hospital was "to r/o ischemic bowel."[1]

---

[1]   The abbreviation "r/o" stands for "rule out."

Defendant HCA-HealthOne and its agents and employees assigned Plaintiff Lauren P. Anderson to the care of Defendants Van Pelt, Long, and Critical Care & Pulmonary Consultants ("CCPC").

Defendant Van Pelt, who wrote and signed the admitting History and Physical Report, obtained the history in part from Plaintiff William W. Anderson, III, at a time when Plaintiff Lauren P. Anderson was asleep after receiving Fentanyl and unable to give her own medical history. In that History, Defendant Van Pelt stated "ALLERGIES: IV IODINE CAUSED A LOCAL INFLAMMATION AND A RASH WHEN IT WAS GIVEN FOR A PROCEDURE." (Block letters in original.)

The following day, April 18, 2007, Defendants Van Pelt, Long, and CCPC ordered a colonoscopy on Plaintiff Lauren P. Anderson. That same day a gastroenterologist performed that colonoscopy, during which he took six (6) biopsy specimens from the mucosa of the cecum.[2]

A pathologist tested all of the biopsy specimens and reported the following day, April 19, 2007, that all six (6) pieces of colonic mucosa showed varying degrees of necrosis (*i.e.*, dead tissue). The pathologist concluded his written report by stating:

---

[2] Mucosa is the innermost layer of intestinal tissue, being the tissue that surrounds the hole ("lumen") that food uses to pass through the small and large intestines. The cecum is that section of bowel that connects the ascending colon and the rest of the large intestine to the small intestine.

"The differential diagnosis still includes ischemic change or possibly an infectious process. Clinical correlation is needed."[3]

The same day as the pathologist's report, April 19, 2007, Defendants Long and CCPC ordered a CT scan (without using contrast fluid) of Plaintiff Lauren P. Anderson's abdomen for "Abdominal pain." Defendants Friedland and Radiology Imaging conducted that scan and thereupon reported that "[t]he findings would indicate an ileus rather than obstruction." No finding was made as to ischemic bowel.

By early the following morning, April 20, 2007, Plaintiff Lauren P. Anderson's white blood cell count had risen to 28,900 and her hematocrit percentage had fallen to 31.5%.

That same day, April 20, 2007, Defendant Doctors and CCPC ordered another CT scan (without using contrast fluid) of Plaintiff Lauren P. Anderson's abdomen, this time for "Lower abdominal pain and bloody diarrhea." Defendants McLaughlin and Radiology Imaging conducted that scan and thereupon reported: "Evidence of chronic ileocecal and very subtle acute jejunal inflammation. These findings, along with the clinical history of lower abdominal pain and bloody diarrhea[,] make Crohn's disease most likely." No finding was made as to ischemic bowel.

As of late that same day, April 20, 2007, Defendants Van Pelt, Long, and CCPC, the physicians managing Plaintiff Lauren P. Anderson's in-hospital care, still did not

---

[3] "Ischemic change" means changes to the mucosa caused by a lack of blood oxygen flow.

have a definitive diagnosis that explained their patient's acute severe symptoms after almost three full days of in-hospital examination and treatment.

At that time and date the said Defendants called upon Defendants Clark and Surgical Consultants for a surgical consultation.

Late that same evening, April 20, 2007, Defendants Clark and Surgical Consultants conducted a diagnostic laparoscopy upon Plaintiff Lauren P. Anderson with a postoperative diagnosis of "No obvious intraabdominal abnormalities."

The following morning, April 21, 2007, Plaintiff Lauren P. Anderson checked herself out of The Medical Center of Aurora (Defendant HCA-HealthOne's magnet hospital) against the advice of that hospital's staff and physicians.

That same day, April 21, 2007, both Plaintiffs flew home to Louisiana where Plaintiff Lauren P. Anderson sought immediate examination and treatment from a gastroenterologist. He, in turn, admitted Plaintiff Lauren P. Anderson the following day, April 22, 2007, to a Louisiana hospital.

At the time of that Louisiana hospital admission, Plaintiff Lauren P. Anderson's white blood cell count was 36,000 and her hematocrit percentage was 31.4%.

On April 23, 2007, Plaintiff Lauren P. Anderson underwent an exploratory laparotomy of her abdomen that found a mesenteric infarction with gangrene and ischemic necrosis (*i.e.*, tissue death from lack of blood oxygen) of the small bowel requiring resection (*i.e.*, surgical removal) of ninety (90) inches of her small intestine

and also of her ileocecal valve and her cecum, leaving her with eighteen (18) inches of small intestine and less than all of her ascending colon.

Two days later, on April 25, 2007, Plaintiff Lauren P. Anderson underwent a second laparotomy, this time with anastomosis (*i.e.*, direct connection) of her jejunum (the only remaining part of her small intestine) to what was left of her ascending colon.

Plaintiff Lauren P. Anderson remained a patient in that Louisiana hospital for fourteen (14) days before being discharged on May 8, 2007.

**B.     PROCEDURAL HISTORY**

Plaintiffs filed their Complaint on March 30, 2009 (Doc. # 1).  Defendant Critical Care & Pulmonary Consultants, P.C. filed its Motion for Judgment on the Pleadings on July 31, 2009 (Doc. # 64), Plaintiffs responded on August 18, 2009 (Doc. # 71), and Defendant replied on August 25, 2009 (Doc. # 77).

**II.  STANDARD OF REVIEW**

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is governed by the same standard of review applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Nelson v. State Farm Mut. Auto Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005).  Fed. R. Civ. P. 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201

(10th Cir. 2003) (citations and quotation marks omitted).  "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

The Supreme Court recently retired "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), abrogated by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The Court replaced the *Conley* standard with a new standard in *Twombly*, which "prescribed a new inquiry for [courts] to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  The Court explained that "a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss."  *Id.* (internal citation and brackets omitted).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Id.*

### III.  ANALYSIS

Plaintiff's Complaint alleges that "Defendants Aleksandra M. Kaminska, M.D., David C. Van Pelt, M.D., Brook W. Long M.D. and Critical Care & Pulmonary Consultants, P.C., (CCPC) a Colorado professional corporation, **jointly and severally** committed actionable negligence and medical malpractice." (emphasis added) (Doc. # 1, ¶ 33).  Plaintiffs list eight allegedly negligent acts:

  a. Accepting a patient whose presenting complaints manifestly required management and care by a gastroenterologist or a team of gastroenterologists;

  b. Failing to obtain any gastroenterology consult or to involve any gastroenterologist in Plaintiff Lauren P. Anderson's care other than ordering a colonoscopy with biopsies;

  c. Failing to rule out ischemic bowel;

  d. Failing to confirm scientifically or otherwise that Plaintiff Lauren P. Anderson was in fact allergic to iodine contrast fluid and, if so, the true degree and severity of any allergic reaction to iodine contrast fluid;

  e. Failing to consider and apply available alternatives to iodine contrast fluid and/or available techniques to minimize and overcome allergic reactions while using iodine contrast fluid;

  f. Giving inadequate radiology orders to the radiologists;

  g. Failing to consult with the radiologists to determine the best diagnostic tools available for a patient with both an alleged iodine contrast fluid allergy and a suspected ischemic bowel;

  h. Failing to realize that the surgeon did not take the steps necessary to rule out ischemic bowel during exploratory laparoscopy; and

  i. Any other acts or omissions that subsequent discovery herein might reveal.

(Doc. # 1, ¶ 33.)

8

According to the "corporate practice of medicine" doctrine recognized in Colorado, entities may not be held vicariously liable for the negligence of their employed or contracted physicians because, as a matter of law, they are unable to control the medical practice of those physicians. C.R.S. § 12-36-117(1)(m); C.R.S. § 25-3-103.7; *Hall v. Frankel*, 190 P.3d 852, 861 (Colo. App. 2008). Under this doctrine, a corporation that employs a physician may not interfere with the physician's independent medical judgment. *Pediatric Neurosurgery, P.C. v. Russell*, 44 P.3d 1063, 1067 (Colo. 2002). However, under the special conduct exception, a hospital may be liable when it commits independent acts of negligence. *See Estate of Harper v. Denver Health & Hosp. Auth.*, 140 P.3d 273, 275-276 (Colo. App. 2006); *Moon v. Mercy Hosp.*, 150 Colo. 430, 433, 373 P.2d 944, 945.

All of the allegedly negligent actions listed in the Complaint require the exercise of independent medical judgment by a physician. None of the claims allege independent acts of negligence by CCPC, and are therefore based on vicarious liability.

Based on the foregoing, this Court finds that the Complaint is not legally sufficient to state a claim against CCPC.

## IV.  CONCLUSION

Accordingly, the Court ORDERS that Defendant's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Doc. # 64) is GRANTED.

DATED:  January   25  , 2010

BY THE COURT:

*[signature: Christine M Arguello]*

CHRISTINE M. ARGUELLO
United States District Judge