**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 09-cv-00704-CMA-KMT

LAUREN P. ANDERSON, and
WILLIAM W. ANDERSON, III,

    Plaintiffs,

v.

DAVID C. VAN PELT, M.D.,
BROOKS W. LONG, M.D.,
CHRISTOPHER G. McLAUGHLIN, M.D., and
SALLIE B. CLARK, M.D.,

    Defendants.

---

**ORDER GRANTING DEFENDANT McLAUGHLIN'S MOTION TO STRIKE PLAINTIFF'S UNTIMELY EXPERT OPINIONS (# 183), DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY (# 180), AND GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT McLAUGHLIN (# 179)**

---

    This case is a medical malpractice action brought by Plaintiffs Lauren P. Anderson and William W. Anderson's ("Plaintiffs") concerning the medical treatment Plaintiff Lauren Anderson received from the named defendants. This matter is before the Court on Defendant Christopher G. McLaughlin, M.D.'s ("McLaughlin") Second Amended Motion for Summary Judgment (Doc. # 179), Defendant McLaughlin's Motion to Strike Plaintiffs' Untimely Expert Opinions (Doc. # 183), and Plaintiffs' Motion for Leave to File Surreply to Defendant McLaughlin's Second Amended Motion For Summary Judgment. (Doc. # 180). For the following reasons, the Court grants

McLaughlin's motion to strike Plaintiffs' expert opinions, denies Plaintiffs' motion for leave to file a surreply, and grants summary judgment in Defendant McLaughlin's favor.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are not in dispute. (*See* Doc. ## 179, 170.)

On April 17, 2007, Ms. Anderson was admitted to the Medical Center of Aurora with complaints of severe abdominal pain and bloody diarrhea. Defendant Christopher McLaughlin, M.D., ("McLaughlin") a physician specializing in the field of diagnostic radiology, interpreted an abdominal and pelvic CT scan of Ms. Anderson on April 20, 2007. In interpreting the CT scan, Dr. McLaughlin made comparison to a prior CT scan of her abdomen and pelvis performed three days earlier, on April 17, 2007.[1]

Dr. McLaughlin's "Findings" were reported in the patient's medical record as follows:

> There are findings that suggest possible Crohn's disease. Specifically, there is submucosal fat deposition within the tip of the cecum and terminal ileum as seen on series 2, image 69 on adjacent images. In addition, there appears to be very faint mesenteric edema adjacent to an upper abdominal bowel loop, probably jejunum seen on series 2, image 35 on adjacent images. Findings are suspicious for areas of jejunal and ileocecal inflammation with both chronic and acute findings; therefore findings would be most consistent with Crohn's disease. There is no current evidence of bowel dilation to suggest obstruction. No free fluid or fluid collection to suggest abscess. Overall inflammatory change is very mild and subtle. The lung base images are clear. The liver, spleen, pancreas, and kidneys appear normal without intravenous contrast. There has been prior colectomy. There is mild nodularity of the left adrenal gland, nonspecific. No evidence of abdominopelvic adenopathy. Urinary

---

[1] Plaintiffs alleged this comparison was not reported in writing.

bladder is empty. Bones demonstrate mild lower lumbar degenerative change.

Dr. McLaughlin's "Impression" of the CT scan of April 20 was also included in the patient's medical record:

1. Evidence of chronic ileocecal and very subtle acute jejunal inflammation. These findings, along with the clinical history of lower abdominal pain and bloody diarrhea make Crohn's disease most likely.

2. No bowel obstruction, abscess, or free fluid.

Plaintiffs allege the following additional facts, which are provided here for context only.

Upon receiving McLaughlin's report on April 20, another consulting gastroenterologist rejected the idea of Crohn's disease and suggested exploratory surgery. (Doc. # 170 at 6.) Defendant Long ordered the surgery and Defendant Clark conducted the surgery that same night, finding "No obvious intraabdominal abnormalities." When Ms. Anderson learned of the findings the next morning, April 21, she checked herself out and flew home to Louisiana.[2] The following day, April 22, 2007, she checked into a hospital in Slidell, Louisiana. The day after that, April 23, an exploratory surgery resulted in removal of ninety (90) inches of gangrenous small bowel, her entire gangrenous ileocecal valve and her entire gangrenous cecum (the first section of her colon).

---

[2] McLaughlin alleges Mrs. Anderson discharged herself from the hospital against medical advice. (Doc. # 174 at 9.)

3

### B. PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint on March 30, 2009, against multiple defendants, including Defendant Christopher G. McLaughlin, M.D., alleging professional negligence in the delay of diagnosis of ischemic bowel, thereby causing Mrs. Anderson to lose a significant portion of her bowel. (Doc. # 1, Compl.; Doc. # 107, Am. Compl.)

Plaintiffs' expert reports were due on December 31, 2009, McLaughlin' expert reports were due on March 15, 2010, and rebuttal expert reports were due on April 16, 2010. (Doc. # 59, Scheduling Order at 14; Doc. # 121, Minute Order.) Discovery closed on June 1, 2010. (Doc. # 60.)

### C. THE INSTANT MOTIONS

On August 6, 2010, McLaughlin moved for summary judgment based on the alleged lack of evidence showing causation between his use of the word "chronic" and Plaintiffs' injuries. (Doc. # 155.) The motion was amended twice. (*See* Doc. # 160, Am. Mot. Summ. J.; Doc. # 179, Second Am. Mot. Summ. J.) In support, McLaughlin noted that Plaintiffs' radiologist expert, Richard Karsh, M.D. opined that McLaughlin deviated from the standard of care by using the word "chronic" in the CT report to describe the inflammation seen on Ms. Anderson's CT scan. (Doc. # 170-1, Karsh Aff. at 3, ¶ 9 (setting forth his deposition testimony).) However, Dr. Karsh testified in his deposition that he could not opine to a reasonable degree of medical probability that Dr. McLaughlin's use of the term "chronic" in the CT report caused any injury, damage or loss to Plaintiffs. (Doc. #179, Def.'s Mot. Summ. J. at 3, ¶ 11; Doc. #170, Pls.' Resp. at 3, ¶ 11.) Additionally, Plaintiffs' rebuttal expert C. Phillip Pattison, Jr., M.D.

4

("Dr. Pattison") opined, "there is no way to determine with any degree of medical probability exactly what damage to Mrs. Anderson's bowels took place when." (Doc. # 170-4.)  McLaughlin did not depose Dr. Pattison on his rebuttal opinion.[3]

In opposing the motion, Plaintiffs submitted the affidavit of Dr. Pattison, dated almost five months after the expert rebuttal report deadline.    (Doc. # 170, Pls.'s Opp'n; Doc. # 170-3, Pattison Aff.).  In his affidavit, Dr. Pattison opines that Mrs. Anderson's injuries resulted, at least in part, from McLaughlin's failure to diagnose her condition properly.  (Doc. #170-3, ¶ 4.)

In his reply brief, McLaughlin highlighted the deposition testimony of Richard A. Feiman, M.D., the gastroenterologist who treated Mrs. Anderson on the day in question, in which he testified that he was not misled by the use of "chronic" in the CT report. (Doc. # 174, Def.'s Reply at 4-5, citing Doc. #160-3, Feiman Dep. at 55:1-15.)

On September 29, 2010, Plaintiffs moved for leave to file a surreply to McLaughlin's motion for summary judgment.  (Doc. # 180.)  Plaintiffs contend a surreply is needed to address the allegedly new arguments and evidence McLaughlin advanced in his reply, namely those surrounding the testimony of Dr. Fieman. McLaughlin filed his response on October 20, 2010.  (Doc. # 182.)  Plaintiffs did not file a reply.

On October 22, 2010, McLaughlin moved to strike Dr. Pattison's affidavit on the grounds that it contains new or modified opinions "carefully crafted to defeat" his motion for summary judgment.  (Doc. # 183 at 2-3, ¶¶ 2, 5, 9-11.)  Plaintiffs filed their

---

[3] Plaintiffs disclosed Pattison as a rebuttal witness after he had already been deposed following his case-in chief disclosure.  (Doc. # 185, Def.'s Reply at 2.)

opposition on October 25, 2010 (Doc. # 184), and McLaughlin filed his reply on November 9, 2010. (Doc. # 185.)

All of the foregoing motions are fully briefed and currently before the Court.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when the movant shows "the materials in the record . . . do not establish . . . the presence of a genuine dispute" and "the movant is entitled to judgment as a matter of law." If the movant "does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claims." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotations omitted). Pursuant to Federal Rule of Civil Procedure 56(e), the nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III. ANALYSIS

Before addressing the merits of McLaughlin's motion for summary judgment, the Court must determine what arguments and evidence are properly before it.

### A.     McLAUGHLIN'S MOTION TO STRIKE

McLaughlin seeks to strike the affidavit of Dr. Pattison which was submitted in opposition to his motion for summary judgment and which was dated almost five months after the deadline for expert rebuttal reports. McLaughlin contends this affidavit includes opinions not disclosed in Dr. Pattison's expert report and that these opinions are crafted in an attempt to create a triable issue of fact. (Doc. # 183, Motion to Strike at 2, ¶ 2.) First, McLaughlin claims Dr. Pattison's new opinion:

> [T]he delay result[ing] from any failure by [McLaughlin] to diagnose and report Mrs. Anderson's condition correctly . . . resulted in a worsening of her condition and an increase in damage to her bowels.

was in no way disclosed in, and is, in fact, contrary to his initial opinion:

> [T]here is no way to determine with any degree of medical probability exactly what damages to Mrs. Anders's bowels took place when.

(Doc. # 170-4; Doc. #183 at ¶ 8; Doc. # 170-3, ¶ 4).

Second, McLaughlin also contends that the affidavit improperly adds opinions concerning Dr. Pattison's agreement with the opinion of Plaintiffs' other expert, Dr. Karsh, because Dr. Pattison failed to identify Dr. Karsh's opinion as something he reviewed or relied upon when rendering his initial report. (Doc. # 183, ¶¶ 14-15.) According to McLaughlin, he is prejudiced by having these "new, never-before disclosed causation opinions suddenly appear in the case in response to a Motion for Summary Judgment." (*Id.*, ¶ 16.)

Plaintiffs counter that Dr. Pattison's affidavit statements are not new, but merely "expound[ed] on" and "flowed naturally" from his initial rebuttal report. Plaintiffs analogize it to building a novel from a short story. (Doc. # 184 at 5.)

The Court agrees with McLaughlin that the opinions set forth in Dr. Pattison's affidavit constitute new opinions that should have been disclosed in his rebuttal opinion as required by Federal Rule of Civil Procedure 26(a). The Court can, nevertheless, "allow evidence violating Rule 26(a) [but] only if the violation was justified or harmless." *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 953 (10th Cir. 2002) (citation omitted). Factors that guide such a determination include: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.* (quotation and citation omitted).

Concerning the factor of prejudice and surprise, Rule 26 requires that an expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a). The purpose of this disclosure requirement is to provide adequate notice of the substance of the expert's forthcoming testimony and to give the opposing party time to prepare for depositions and a response, including arranging for expert testimony from other witnesses. *Id.* at 953. To the extent Dr. Pattison's opinion is that Plaintiffs' injuries resulted from McLaughlin's conduct, his initial report provides no such notice. To the contrary, his initial report states "there is no way to determine with any degree of medical probability exactly what damage . . . took place when." (Doc. # 170-4.) Plaintiffs argue that any prejudice

McLaughlin feels is a result of his own failure in deposing Dr. Pattison concerning his rebuttal report. However, the Rule requires that the complete opinion be disclosed in the expert report. It is not McLaughlin's burden to try to discover what the opinion is through a deposition. This new opinion was only disclosed in opposition to summary judgment after discovery has closed and the dispositive motion deadline has passed. McLaughlin would be greatly prejudiced if this opinion were allowed to stand.

The second and third factors – the ability to cure the prejudice and whether introduction of the opinion would disrupt trial – are related in this case. The parties do not offer options for curing the prejudice. The Court, nevertheless, notes that such prejudice can be avoided only by reopening discovery, allowing McLaughlin to depose Dr. Pattison and possibly other expert witnesses, and extending the dispositive motion deadline. Such a cure, however, would greatly disrupt the trial schedule. The final pretrial conference is to occur just three months from the disclosure of these new opinions.

The parties also do not address the fourth factor, Plaintiffs' bad faith and willfulness in the late disclosure of the opinion. The Court recognizes that the timing of the disclosure of the new opinions is convenient, coming in opposition to a motion for summary judgment. However, even assuming Plaintiffs acted in good faith, their good faith alone would not be enough to overcome the other factors. *See Jacobsen,* 287 F.3d at 954. For these reasons, the Court grants McLaughlin's motion and strikes paragraphs 4 and 5 of Dr. Pattison's affidavit.

### B.     PLAINTIFFS' MOTION TO FILE SURREPLY

Plaintiffs move to file a surreply to McLaughlin's motion for summary judgment on the grounds that McLaughlin's reply introduces new legal argument and evidence. (Doc. # 180.)  Specifically, Plaintiffs claim that (1) the reply "converts Dr. Fieman, a mere consultant, into 'the physician making the decisions about Mrs. Anderson's care on the date of the radiology report,'" and (2) McLaughlin attempts to shift fault to Dr. Fieman despite not designating him as a third party tortfeasor.  (*Id.* at 5-7.)

McLaughlin responds that Dr. Fieman had decision-making responsibilities regarding Mrs. Anderson's care and, thus, what label is attached to him is inconsequential for purposes of the motion for summary judgment.  (Doc. # 182.) McLaughlin also clarifies that he is not attempting to fault Dr. Fieman.  Rather, he is attempting to show that McLaughlin's use of "chronic" was not misleading to Dr. Fieman and that Dr. Fieman "made his own interpretation of the CT report based on the totality of information he had."  (Doc. # 182 at 3.)

The Court finds that Plaintiffs are not entitled to file a surreply.  McLaughlin argued in his opening brief that Dr. Fieman and another treating physician were not misled by McLaughlin's CT report.  Thus, this argument is not new.  Contrary to Plaintiffs' assertion, nothing in the reply evinces an attempt to find fault with or blame Dr. Fieman's conduct.  McLaughlin's reply simply highlights the point that Dr. Fieman was not misled.  Additionally, whether Dr. Fieman was a consulting physician or an attending physician is irrelevant to whether Plaintiffs established causation between

10

McLaughlin's actions and Mrs. Anderson's injuries. Accordingly, Plaintiff's motion for leave to file a surreply is denied.

## C.     McLAUGHLIN'S MOTION FOR SUMMARY JUDGMENT

Having dispensed with the issue of what arguments and evidence are properly before the Court, the Court can now address the merits of McLaughlin's motion for summary judgment.

In a medical malpractice action under Colorado law, the plaintiff has the burden to prove by a preponderance of the evidence (1) that the defendant-physician failed to conform to the controlling standard of care, and (2) that such failure caused plaintiff's injuries. *Melville v. Southward*, 791 P.2d 383, 387 (Colo. 1990). Because McLaughlin does not bear the ultimate burden of persuasion at trial, he may satisfy his burden at the summary judgment stage by identifying a lack of evidence on an essential element of Plaintiffs' claim. *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotations omitted). Here, McLaughlin moves for summary judgment based on the alleged lack of evidence establishing the requisite causation between his conduct and Mrs. Anderson's injuries. (Doc. # 179.)    "To create a triable issue of fact regarding causation in a medical malpractice case, the plaintiff need not prove with absolute certainty that the defendant's conduct caused the plaintiff's harm, [but] the plaintiff must establish causation beyond mere possibility or speculation." *Kaiser Found. Health Plan of Colo. v. Sharp*, 741 P.2d 714, 719 (Colo. 1987) (citations omitted).

To demonstrate the absence of evidence on causation, McLaughlin points to the deposition of Dr. Karsh, Plaintiff's expert, in which he testified that he cannot opine to a reasonable degree of medical probability that McLaughlin's use of the term "chronic" in the CT report caused any injury, damage, or loss to Plaintiffs. (Doc. # 179 at 3, ¶ 11; Doc. # 170, at 3, ¶ 11.) Additionally, McLaughlin submitted the deposition testimony of two treating physicians who testified that McLaughlin's use of the term "chronic" did not affect their decision-making concerning their care of Ms. Anderson.[4] (Doc. # 179, Def.'s Mot. Summ. J. at 11, citing Doc. ## 160-3 and -4, Exhibits C and D).

Plaintiffs deny that summary judgment is appropriate, contending that Dr. Pattison's rebuttal expert report and affidavit create a genuine issue of material fact on medical causation. (Doc. # 170 at 2, ¶ 7 and at 9.) As determined above, however, the Court struck paragraphs 4 and 5 of Dr. Pattison's affidavit from the summary judgment record for failing to comply with Rule 26(a). Consequently, Plaintiffs are left with Dr. Pattison's rebuttal report,[5] which is insufficient to create a triable issue of fact on causation:

---

[4] McLaughlin did not identify these facts as material in his opening brief.

[5] Plaintiffs submitted, but did not rely on, a post-expert report affidavit of Dr. Karsh in which he allegedly summarizes his opinions from his deposition. (Doc. # 170-1). Dr. Karsh characterizes his testimony as opining that "the result of the way the term 'chronic' was used within the report . . . completely mis[led] the recipient of the report." (*Id*. at 4, ¶ 10.) Even if Plaintiffs did rely on this untimely affidavit opinion, however, the Court would not consider it on summary judgment because it is contrary to his prior deposition testimony. (Doc. # 160-1, Karsh Dep. at 39:17-40:4 ("Q: Are you going to testify that the alleged negligence that you have described and attributed to Dr. McLaughlin to a reasonable medical probability caused any injury, damage, or loss to Mr. or Mrs. Anderson? A: No, I cannot say that within all medical probability.")

> In my considered professional opinion there is no way to determine
> with any degree of medical probability exactly what damage to Mrs.
> Anderson's bowels took place when. After a sudden onset, this was
> a severe and continuing ischemic event that worsened over time.

(Doc. # 170-4.) Thus, Dr. Pattison concluded there was <u>no way</u> to determine, "with any degree of medical probability," whether the damage to Mrs. Anderson's bowels occurred before or after McLaughlin reported his findings on the CT scan. Accordingly, the Court finds summary judgment in favor of McLaughlin is warranted.[6]

## IV. CONCLUSION

Accordingly, for the foregoing reasons it is

ORDERED that Defendant Christopher G. McLaughlin, M.D.'s Motion to Strike Plaintiffs' Untimely Expert Opinions (Doc. # 183) is GRANTED. It is

FURTHER ORDERED that Plaintiff's Motion For Leave to File Surreply to Defendant McLaughlin's Second Amended Motion for Summary Judgment (Doc. # 180) is DENIED. It is

FURTHER ORDERED that Defendant Christopher G. McLaughlin, M.D.'s Second Amended Motion for Summary Judgment (Doc. # 179) is GRANTED, and Defendant Christopher G. McLaughlin is dismissed with prejudice. It is

---

[6] Plaintiffs also dispute that McLaughlin's use of "chronic" is the only conduct Dr. Karsh alleges departs from the standard of care. (Doc. # 179, Def.'s Mot. Summ. J. at 3, ¶¶ 9-10; Doc. # 170, Pls.'s Resp. at 2-3, ¶¶ 9-10.) Plaintiffs claim Dr. Karsh's opinions "are multi-faceted and cannot be reduced to [McLaughlin's] repeated misuse of a single word ('chronic') in his report." (Doc.# 170 at 2-3, ¶¶ 9-10.) To the extent Plaintiffs are claiming that other deviations are present, and thus, other causative links may be established, this argument fails to save their claim. Faced with a motion for summary judgment on the element of causation, Plaintiffs must come forward with sufficient record evidence to demonstrate a causative link between McLaughlin's conduct and Plaintiffs' injuries. Other than the alleged link to McLaughlin's use of "chronic," Plaintiffs have not provided evidence showing a link to any other conduct of McLaughlin.

13

FURTHER ORDERED that the caption on all subsequent filings shall reflect the removal of Christopher G. McLaughlin as a Defendant in this case.

DATED: December  08 , 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge