IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 09–cv–00704–CMA–KMT

LAUREN P. ANDERSON, and
WILLIAM W. ANDERSON, III,

      Plaintiffs,

v.

DAVID C. VAN PELT, M.D.,
BROOKS W. LONG, M.D.,
JEFFREY A. FRIEDLAND, M.D., and
SALLIE B. CLARK, M.D.,

      Defendants.

---

**ORDER**

---

This matter is before the court on "Plaintiffs' Motion to Review Cost Award Amounts" (Doc. No. 313, filed Apr. 22, 2012 [Mot. Review Costs]) and Brief in Support (Doc. No. 314 [Br. Review Costs]), as well as "Plaintiffs' Motion to Set Aside Any Award of Costs" (Doc. No. 315, filed Apr. 22, 2012 [Mot. Set Aside Costs]) and Brief in Support (Doc. No. 316 [Br. Set Aside Costs]). For the following reasons, Plaintiffs' Motion to Set Aside Costs is DENIED and Plaintiffs' s Motion to Review Costs is GRANTED in part and DENIED in part.

## PROCEDURAL HISTORY

This medical malpractice case was tried to a jury from February 21, 2012 to March 5, 2012. District Judge Christine M. Arguello presided over the trial. On March 6, 2012, the jury returned a verdict in favor of Defendants Dr. David Van Pelt, Dr. Brooks Long, and Dr. Sallie Clark (collectively, "Defendants") on all claims. (*See* Doc. No. 298) Accordingly, the Amended Final Judgment was entered in favor of Defendants on April 10, 2012. (Doc. No. 306.) The judgment provided, *inter alia,* that Defendants shall be awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1. (*Id.*)

On April 17, 2012, the Clerk of Court held a hearing on costs. (*See* Doc. Nos. 309-310.) Defendants requested $51,127.47 in costs. After review, the clerk disallowed $21,098.31 of that amount to reach a cost award of $30,029.26—$14,345.76 to Drs. Van Pelt and Long, and $15,683.50 to Dr. Clark. (*See* Br. Review Costs at 1; Clark Resp. Mot. Review Costs at 1.)

Through their present motions, Plaintiffs move to either set aside or reduce that cost award, pursuant to Fed. R. Civ. P. 54(d)(1). Drs. Van Pelt and Long filed a Response to Plaintiffs' Motion to Review Costs on April 30, 2012 (Doc. No. 318 [Van Pelt & Long Resp. Mot. Review Costs]) and Dr Clark filed her Response to Plaintiffs' Motion to Review Costs on May 11, 2012. (Doc. No. 322 [Clark Resp. Mot. Review Costs]). Defendants filed a collective Response to Plaintiffs' Motion to Set Aside Costs on May 8, 2012. (Doc. No. 320 [Resp. Mot. Set Aside Costs].) Plaintiffs submitted their Reply in Support of their Motion to Review Costs and their Reply in Support of their Motion to Set Costs on May 14, 2012 and May 18, 2012,

respectively.  (Doc. Nos. 323 [Reply Mot. Review Costs] & 324 [Reply Mot. Set Aside Costs]).

Accordingly, these matters are ripe for the court's review and ruling.

## DISCUSSION

The court first turns to Plaintiffs' Motion to Set Aside Costs.  The court then considers Plaintiffs' Motion to Review Costs.

*I.     Motion to Set Aside Costs*

*A.     Real Party in Interest*

At the outset, the court addresses Plaintiffs' pervasive assertion that Defendants' insurer, COPIC Insurance Company, is the "true recipient of any cost award."  (Br. Set Aside Costs at 3.) Plaintiffs take this proposition so far as to argue that Defendants have deliberately misled the court by suggesting that they, rather than COPIC, are the real parties in interest with respect to costs.  (*Id.* at 7.)

The court rejects this argument for substantially the same reasons underlying the Colorado Court of Appeals' rejection of a similar argument in *Mullins v. Kessler,* 83 P.3d 1203 (Colo. App. 2003).  Much like with the Colorado Rule considered in *Mullins*, Federal Rule of Civil Procedure 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest."  "[T]he real party in interest is the one who, under applicable substantive law, has the legal right to bring suit."  *FDIC v. Gelderman,* 975 F.2d 695, 698 (10th Cir. 1992).

Here, Defendants, "as the named part[ies] in this action and the part[ies] on whose behalf costs were incurred, ha[ve] the substantive right to receive reimbursement for such costs." *Mullins,* 83 P.3d at 1204.  "The arrangement between defendant[s] and [their] liability insurer for

the disbursement and repayment of those costs is of no consequence." *Id.* (citations omitted). Thus, Defendants, and not COPIC, are the real party in interest with respect to an award of costs. As such, the court rejects any notion that Defendants attempted deliberately to mislead the court as to the real party in interest with respect to costs.

### B.     *Obstructive and Bad Faith Conduct*

Plaintiffs argue that the court should deny Defendants their costs because Defendants were obstructive; acted in bad faith; and inflated their costs before trial, during trial, and in resolving the issue of costs.  (Br. Set Aside Costs at 5-9.)

Federal Rule of Civil Procedure 54(d)(1) provides, in pertinent part, that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Whether or not a prevailing party shall be awarded costs is "within the court's sound discretion," *Homestake Mining Co. v. Mid-Continent Exploration Co.*, 282 F.2d 787, 804 (10th Cir. 1960), but "Rule 54 creates a presumption that the district court will award the prevailing party costs," *Rodriguez v. Whiting Farms, Inc.,* 360 F.3d 1180, 1190 (10th Cir. 2004).  The burden is on the non-prevailing party to overcome this presumption.  *Id.* (citing *Cantrell v. IBEW,* 69 F.3d 456, 459 (10th Cir. 1995)).  In order to exercise its discretion to deny costs to a prevailing party, the court must provide a valid reason for the denial.  *Rodriguez,* 360 F.3d 1180, 1190 (10th Cir. 2004).

Importantly, the denial of costs is "in the nature of a severe penalty," and "there must be some apparent reasons to *penalize* the prevailing party if costs are to be denied."  *Klein v. Grynberg,* 44 F.3d 1497, 1507 (10th Cir. 1995) (emphasis added).  Thus, while other

4

circumstances—such as whether the case presented a "close and difficult question" and whether the non-prevailing party is indigent—may be relevant to the question of whether to award costs, the ultimate focus must be on whether Plaintiffs "have offered any reason why [Defendants] should be penalized in this case." *Rodriguez,* 360 F.3d at 1190.

The court rejects Plaintiffs' argument that COPIC was obstructive, acted in bad faith, and inflated Defendants' costs by preventing Plaintiffs' attorney from interviewing Plaintiff Lauren Anderson's non-party treating physicians. (*See* Br. Set Aside Costs at 5-6.) Plaintiffs have not submitted any evidence to suggest that COPIC—much less Defendants—instructed these physicians not to meet with Plaintiffs' counsel. Rather, the only evidence presented demonstrates that Dr. Rein, for one, refused to meet with Plaintiffs' attorney on his own volition. (*See* Resp. Mot. Set Aside Costs, Ex. 2, Deposition of Alan Rein, 16:19-18:23.) It is not obstructive or bad faith conduct for a non-party to decline to be informally interviewed and instead require the party's attorney to use formal discovery mechanisms, such as a Rule 30 deposition, to obtain their opinions and testimony.

The court also rejects Plaintiffs' argument that Defendants, through their attorneys, were obstructive throughout trial. (*See* Br. Set Aside Costs at 6-7.) Although Plaintiffs insist that Defendants' counsel "forced" Plaintiffs' attorney to draft briefs overnight on two occasions—the first in response to "what in effect was a Motion in Limine" and the second in response to Defendants' "repeated attempts to keep CIGNA's medical bills out of evidence"—these incidents are not at all inconsistent with rigors typical of a multi-week trial. In fact, as to the latter incident, the record suggest that District Judge Arguello specifically ordered the parties to

brief the issue of whether these medical bills were admissible. (Defs' Trial Brief re: Admissibility of Med. Bills, Doc. No. 284, at 1.)

Plaintiffs also maintain that Defendants violated Judge Arguello's Civil Practice Standards by attempting to introduce new proposed jury instructions nine days into trial. (Br. Set Aside Costs at 7.) However, even assuming the truth of this allegation, the court finds that denying Defendants their cost would be a wholly disproportionate penalty for a single violation of the District Court's practice standards—particularly when Plaintiffs do not maintain that this incident affected Defendants' costs in any way and when Judge Arguello herself was in a position to sanction the conduct should she have deemed it warranted.

Finally, the court does not find that Defendants acted in bad faith in attempting to resolve their costs with Plaintiffs. (*See* Br. Set Aside Costs at 7-9.) Instead, it appears that both parties acted unreasonably with respect to costs. In light of the substantial costs incurred by her client, it was likely unreasonable that Dr. Clark's attorney failed to present Plaintiffs' counsel with a proposed bill of costs prior to the conference required by Local Rule 54.1. (Affidavit of John Rawls [4/20/2012 Rawls Aff.], Doc. No. 316-3, ¶ 5.) In addition, Defendant Long and Van Pelt's counsel apparently presented Plaintiff's counsel at the conference with a bill of costs that exceeded the one exchanged a week earlier by over $4,300. (*Id.* ¶ 9.)

However, Plaintiffs' counsel also acted unreasonably at the Rule 54.1 conference. The purpose of a Rule 54.1 Conference is to attempt to resolve disputes regarding costs without requiring the Clerk of Court's intervention. The record, including Plaintiffs' present motions and Plaintiffs' counsel's own affidavit, makes it abundantly clear that no resolution would have

been reached. (*See id*. ¶¶ 7-14; *see also* Van Pelt and Long Stmt. of Conferral, Doc. No. 303, filed Apr. 2, 2012.) Indeed, although Plaintiffs' counsel initially objected to the lack of invoices and other documentation to support Defendant Van Pelt and Long's proposed bill of costs, as well as Defendants' proposal that Plaintiffs' counsel state objections to general categories of cost, Mr. Rawls subsequently balked by refusing to state the grounds for his objections when he was presented with documentation in support of individual costs. (*Id.* ¶ 11.) This obstinance forced the parties to terminate the conference shortly thereafter. Accordingly, even assuming Defendants' counsel acted unreasonably prior to the Rule 54.1 conference, denying costs on this basis would require that the court turn a blind eye to Plaintiffs' attorney's own culpable conduct at the Rule 54.1 conference.

Altogether, the court finds that Defendants did not engage in any bad faith, obstructive conduct, or other conduct that would warrant the "severe penalty" of denying them their prevailing-party costs incurred in this litigation. *Klein,* 44 F.3d 1497, 1507 (10th Cir. 1995). As such, the court does not consider Plaintiffs' contributing arguments that they are indigent and that the issues at trial were close and difficult to be persuasive with respect to an award of costs.

### C. *Request to Apportion Costs Between Plaintiffs*

Plaintiffs also argue in their Motion to Set Aside Costs that the court should proportionally allocate Defendants' cost awards between Plaintiffs because a "judgment against Defendants would have made separate awards to each Plaintiff" and Mr. Anderson's share of any overall verdict based in part on his loss of consortium claim "would have been no more than five per cent [sic] (5%), if that, of the total." (Br. Set Aside Costs at 4.) The court assumes, without

so holding, that it has discretion to apportion costs in the manner that Plaintiffs request. *See, e.g., Barber v. T.D. Williamson, Inc.,* 254 F.3d 1223, 1234 (10th Cir. 2001) (noting that courts have discretion to apportion costs among the parties where the prevailing party had been only partially successful). Nevertheless, Plaintiffs have not submitted any legal or evidentiary support for their speculative position that Mr. Anderson's potential damages would have been no more than five percent of a jury verdict in favor of Plaintiffs' claims. *See Schell v. Navajo Freight Lines, Inc.,* 693 P.2d 382, 385 (Colo. App. 1984) (Because it "consists of rights arising out of a marital relationship, which by their nature are intangible . . . the assessment of damages for loss of consortium is within the sound discretion of the jury" and may only be overturned if the damage award is "manifestly excessive"). Further, because Mr. Anderson's loss of consortium claim was derivative of Ms. Anderson's claims, the costs incurred by Defendants are equally attributable to both of their respective claims. In other words, even in the absence of Ms. Anderson's claims, the costs incurred by Defendants would have been the same with respect to Mr. Anderson's loss of consortium claim. *See In re Williams Sec. Litigation,* 558 F.3d 1144, 1150 (10th Cir. 2009) (affirming district court's decision to decline to apportion costs between two subclasses because the defendant would have incurred the same costs even in the absence of the other subclass). Accordingly, the court declines to apportion Defendants' cost awards based on Plaintiffs' speculation as to the respective damages they might have recovered.

Altogether, for the foregoing reasons, the court will deny Plaintiff's Motion to Set Aside Costs.

### II.     *MOTION TO REVIEW COSTS AWARD*

Plaintiff's Motion to Review Costs seeks to reduce cost items awarded by the Clerk of Court. Specifically, Plaintiffs request the court disallow an additional $11,108.56 for deposition and trial transcripts, copying charges, and court report fees. (*See generally* Br. Review Costs.)

As mentioned above, "Rule 54(d)(1) provides that costs, other than attorney's fees, should generally "be allowed to the prevailing party." *In re Williams,* 558 F.3d at 1147. "Items proposed by prevailing parties 'as costs should always be given careful scrutiny.'" *Id.* (quoting *U.S. Indus., Inc. v. Touche Ross & Co.,* 854 F.2d 1223, 1245 (10th Cir. 1988), *overruled on other grounds as recognized by Anixter v. Home-Stake Prod. Co.,* 77 F.3d 1215, 1231 (10th Cir. 1996)). 28 U.S.C. § 1920 provides, *inter alia,* that a judge or clerk of any court of the United States may tax costs for transcripts and copies "necessarily obtained for use in the case." 28 U.S.C. § 1920(2) & (4); *see also In re Williams,* 558 F.3d at 1147.

"The 'necessarily obtained for use in the case' standard does not allow a prevailing party to recover costs for materials that merely 'add to the convenience of counsel' or the district court." *In re Williams,* 558 F.3d at 1147-48 (quoting *Touche Ross,* 854 F.2d at 1245). Instead, "[t]o be recoverable, a prevailing party's transcription and copy costs must be 'reasonably necessary to the litigation of the case.'" *Id.* (quoting *Mitchell v. City of Moore*, 218 F.3d 1190, 1204 (10th Cir. 2000)). At the same time, "materials may be taxable even if they are not 'strictly essential' to the district court's 'resolution of the case.'" *Id.* (quoting *Furr v. AT&T,* 824 F.2d 1537, 1550 (10th Cir. 1987)). "If deposition transcripts or copies were 'offered into evidence,' were 'not frivolous,' and were 'within the bounds of vigorous advocacy,' costs may be taxed. *Id.* (quoting *Callicrate v. Farmland Indus., Inc.,* 139 F.3d 1336, 1340 (10th Cir. 1998)).

In addition, a prevailing party bears the burden of establishing the amount of costs to which it is entitled. *Id.* (citing *Allison v. Bank One-Denver,* 289 F.3d 1223, 1248 (10th Cir. 2002). The amount a prevailing party requests "must be reasonable." *Callicrate,* 139 F.3d at 1339. "Once a prevailing party establishes its right to recover allowable costs, however, the burden shifts to the 'non-prevailing party to overcome' the presumption that these costs will be taxed." *In re Williams,* 558 F.3d at 1148 (quoting *Rodriguez,* 360 F.3d at 1190).

### A.     *Transcript of Dr. Karsh's Deposition*

Plaintiffs argue that the court should deny Defendants the costs attributable to the deposition of Dr. Richard Karsh, Plaintiffs' expert radiologist, because two former defendants, Drs. Friedland and McLaughlin—through their insurer, COPIC—agreed to waive costs in exchange for Plaintiffs' agreement to waive their right to appeal the ruling on Dr. McLaughlin's Motion for Summary Judgment. (Br. Review Costs at 3-4.) As discussed above, however, the parties to the action, and not their insurer, are the real party in interest with respect to costs. Thus, the fact that Drs. Friedland and McLaughlin waived their right to recover costs incurred with respect to Dr. Karsh's deposition as part of Dr. McLaughlin's resolution of the claims against him does not preclude Defendants from recovering the same costs.

Otherwise, Plaintiffs do not challenge the fact that Dr. Karsh's deposition was necessary to the litigation. Indeed, to the contrary, Dr. Karsh specifically opined as to whether Dr. Long's treatment of Plaintiff deviated from the acceptable standard of care. (Resp. Mot. Review Costs, Ex. A.) Plaintiffs also do not argue that the amount of costs incurred as a result of taking Dr.

Karsh's deposition was unreasonable. Accordingly, the court will affirm the Clerk's award of $772.60 for the costs incurred with respect to Dr. Karsh's deposition.

### B. *Dr. Van Pelt and Dr. Long's In-House Copying Charges*

Plaintiffs object to the Clerk's taxation of costs for in-house copying of trial exhibits. Plaintiffs do not object to the 3,382 page count authorized by the Clerk. Rather, they object to the claimed per-page rate of $0.25. Plaintiffs contend that $0.07 is reasonable for such services. (Br. Review Costs at 4-5.)

Plaintiff's rely primarily on an order authored by Chief Judge Marcia S. Krieger to support their argument that $0.07 per page is a reasonable copying charge. *Felix v. City and County of Denver,* No. 08-cv-02228-MSK-KMT, 2011 WL 1085766, at *11 (D. Colo. Mar. 24, 2011). In *Felix,* Judge Krieger rejected the Clerk's decision to award $0.50 per page in copying costs, and instead awarded $0.07 per page. *Id.* at *11. In support of that conclusion, Judge Krieger looked to other decisions from outside this district where courts taxed copying costs at rates between $0.05 and $0.12 cents per page. *Id.* (citing *Johnson v. Holway,* 522 F. Supp. 2d 12, 20-21 (D.D.C. 2007) ($0.12 cent per page); *James v. Wash Depot Holdings, Inc.,* 242 F.R.D. 645, 651-52 (S.D. Fl. 2007) ($0.10 per page); *Tinch v. City of Dayton,* 199 F. Supp. 2d 758, 770 (S.D. Oh. 2002) ($0.05 per page)). Judge Krieger was persuaded by the analysis of those cases, and concluded that, "absent a showing from Denver that a lesser rate was somehow impractical to obtain, copying costs should be taxed at a rate commonly found at local print shops," which the plaintiff submitted was $0.07 per page. *Id.*

Here, the only evidence in the record as to the rate of local print shops is an invoice from National Legal - Colorado, which Drs. Long and Van Pelt do not contest reflects a rate of $0.07 per page for copying. (Van Pelt & Long Bill of Costs, Doc. No. 302, Ex. B at 8-9.) Nevertheless, the court finds that Drs. Long and Van Pelt have shown that the rate found at local print shops was impractical to obtain at the pertinent stage of this case. More specifically, the trial exhibits prepared in-house included thousands of pages of Ms. Anderson's medical records, which required manual redaction of birth dates and Social Security numbers. (Van Pelt & Long Resp. Mot. Review Costs at 5.) Thus, copying these documents, immediately before trial, was far from a routine task that might have been outsourced to a commercial copy company at a lesser rate. The record further reflects that Drs. Long and Van Pelt's attorneys otherwise used a commercial copy whenever practicable. (Van Pelt & Long Bill of Costs, Ex. B at 7-13.)

The court further finds the copying rate of $ 0.25 per page to be reasonable as it reflects the cost of leasing a copier capable of producing the volume of documents necessary for trial in this case, the paper and toner used, as well as a law firm's inability to match the economies of scale available to a commercial copy service. (Van Pelt & Long Resp. Mot. Review Costs at 4.) Accordingly, the court affirms the Clerk's award of $845.50 for in-house copying charges.

### C. *Court Reporter Fees for Depositions*

Plaintiffs next challenge the court reporter appearance fees charged for several depositions taken in this case. Plaintiffs argue that Drs. Van Pelt and Long insisted on using national court reporting firms to arrange depositions, which unreasonably inflated the deposition charges. In support of this position, Plaintiffs rely on their attorney's affidavit submitted in

opposition to Defendants' proposed bills of cost for the proposition that "[in] New Orleans most court reporters do not charge an appearance fee unless they must wait for over thirty minutes (in which case they charge fifty dollars ($50.00)) or unless no transcript is ordered (in which case they charge one hundred dollars ($100.00))." (Doc. No. 308-1, Affidavit of John D. Rawls on Costs ¶ 8 [4/12/2012 Rawls Aff.].)

As a threshold matter, the court finds that it was reasonable for Defendants to employ national court reporting firms in this case. Depositions were taken in locations throughout the country, including, Denver, Tampa, San Francisco, Kansas City, and Louisiana. It was reasonable for Defendants to select national court reporting firms to avoid the burden of having to locate, contact, and arrange depositions with local court reporting agencies in each of these locales.

Otherwise, the court finds the appearance fees to be reasonable. First, the court notes that the appearance fees charged for depositions taken in New Orleans are roughly in accord with similar fees charged in Denver, Colorado, during the same time period. More specifically, Plaintiffs' attorney admits that "[i]n Denver the standard appearance fee is sixty-five dollars ($65.00) per half-day," or $130.00 for a full-day deposition—a mere twenty dollars less than the fees charged for the depositions taken in Louisiana. (Rawls Aff. ¶ 8.) Further, Plaintiff's attorney's affidavit, at best, sets forth only his belief as to what most court reporters in New Orleans charge; the documentation submitted by Dr. Clark demonstrates that at least some court reporters serving the New Orleans area charge $150.00 appearance fees. (*See* Clark Proposed Bill of Costs, Doc. No. 302, Exs. A 17 – A 19.)

As to the deposition of Dr. Charles Pattinson, which was taken in Kansas City, Missouri, Plaintiffs have not submitted any evidence suggesting that $150.00 is an unreasonable appearance fee in Kansas City. Because it is roughly in accord with the appearance fees charged in Denver, the court finds it to be reasonable.

At first blush, the $325.00 appearance fee for Dr. David Shapiro's deposition, which was conducted in the Tampa, Florida, appears to be disproportionately high. However, the court has located at least one case from the Middle District of Florida in which a similar appearance fee was approved. *Gleason v. Roche Labs., Inc.,* 3:09-cv-1172-J-20JRK, 2011 WL 6076526, at *1 (M.D. Fl. Dec. 6, 2011) (approving a court reporter's $355.00 "per diem" appearance fee). Plaintiffs have not submitted any evidence suggesting that this fee is nevertheless unreasonable for the Tampa area. Accordingly, notwithstanding the fact that it is facially disproportionate to other appearance fees charged in this case, the court cannot say the $325.00 appearance fee charged for Dr. Shapiro's deposition in Tampa, Florida, is unreasonable.

Plaintiffs also object to the per-page rate awarded for original transcripts for depositions noticed by Defendants. Plaintiff's rely again only on their attorney's affidavit for the proposition that $3.90 is the per-page rate for an original deposition transcript in New Orleans and $3.65 is the per-page rate in Denver.

The majority of the depositions as to which Plaintiffs challenge the per-page rate took place in Louisiana.[1] However, Plaintiff's counsel's statement that $3.90 is the standard per-page

---

[1] These depositions include, specifically, the depositions of Mr. Anderson, Ms. Anderson, Dr. Shapiro, Dr. Pedro Serrant, Dr. Michael Karam, Dr. Shael Wolfson, Dr. Arvind Gopal, and

transcription rate in New Orleans is conclusory – insofar as it is not supported with any specific evidence of the actual rates charged by New Orleans court reporters – and therefore unpersuasive. In light of the rates that were actually charged to Defendants by the court reporters who appeared at the depositions in New Orleans, the court finds $4.50 to be a reasonable per-page rate for these depositions.

Plaintiffs also challenge the per-page rate for Drs. Shapiro's and Lisa Capaldini's depositions. (Br. Review Costs at 6.) Those depositions took place in Tampa and San Francisco, California, respectively. (*See id.*; Van Pelt & Long Proposed Bill of Costs, Ex. A at 17.) Plaintiffs have not submitted any evidence to suggest that $4.50 is an unreasonable per-page rate in Tampa and San Francisco. In light of the per-page rates that were actually charged to Defendants by the court reporters for these depositions who appeared at the depositions in these two locations, the court finds charges $4.50 to be a reasonable per-page rate for these depositions.

Accordingly, for the reasons discussed above, the court affirms the Clerks' award of the court reporters' appearance fees and per-page rates for the depositions discussed above.

### D.     *Daily Trial Transcripts*

Plaintiffs challenge the Clerk's award of costs for daily trial transcripts of Plaintiffs' expert witnesses. (Br. Review Costs at 6-7.) The court agrees that these costs should be disallowed. Drs. Van Pelt and Long maintain that these transcripts were "obtained to assure the

---

Nurse Peggy Blackmon. (*See* Clark Proposed Bill of Costs at 5; Van Pelt & Long Proposed Bill of Costs, Ex. A. at 1.)

examination of defense experts was comprehensive and to prepare for closing argument." (Van Pelt & Long Resp. Mot. Review Costs at 6.) This statement makes clear that the daily transcripts were obtained not because they were necessary to the litigation of the case at the time of transcription. *See Touche Ross,* 854 F.2d at 1248; *cf. In re Williams,* 558 F.3d at 1148 (costs may be taxed if transcripts were "offered into evidence.") Rather, although they "might have added to the convenience of counsel," they were "by no means indispensable." *Farmer v. Arabian Am. Oil Co.,* 379 U.S. 227, 234 (1964) *overruled on other grounds by Crawford Fitting Co. v. J.T. Gibson, Inc.,* 482 U.S. 437 (1987) (reinstating district court's denial of an award for daily trial transcripts). Further, there is no evidence in the record to suggest that Drs. Long, Van Pelt, and Clark obtained court approval of these expenses prior to trial. *Touche Ross,* 854 F.2d at 1248 (finding that "the failure to obtain court approval of a special expense prior to trial also argues against granting the daily rate of transcription.") (citations omitted). Accordingly, the court reduces Drs. Van Pelt and Long's award by $369.06 for the daily trial transcript of Dr. Capaldini's testimony and Dr. Clark's award by $442.25 for the daily trial transcript of Dr. Shapiro's testimony.

### E. "Real Time" Deposition Charges

Plaintiff's also argue that the costs for "Real Time" transcription services used by Drs. Van Pelt and Long's attorneys at Dr. Van Pelt's and Dr. Alexandra Basheer's depositions should be disallowed as unnecessary. (Br. Review Costs at 7-8.) The court agrees.

Dr. Van Pelt and Long argue that "[r]eal time allows an attorney to accurately follow testimony or to cross examine a witness." (Van Pelt and Long Resp. Mot. Review Costs at 6-7.)

This statement demonstrates that, much like the daily trial transcripts, the primary benefit of "Real Time" transcription was the convenience it provided to Defendants' counsel; it was not somehow a matter of necessity. *Cf. Touche Ross,* 854 F.2d at 1248. Indeed, it does not appear that Dr. Van Pelt and Long's counsel used these services at any other depositions. (*See* Br. Support Mot. Review Costs at 7.) Accordingly, the court reduces Drs. Van Pelt and Long's cost award by $179.00 for the "Real Time" transcription services.

### F.     *Multiple Copies of Depositions*

Finally, Plaintiffs maintain that Defendants unreasonably purchased multiple copies of each deposition. First, with respect to the depositions taken by Defendants, Plaintiffs maintain that "COPIC could have saved itself a lot of money by having its attorneys making and sharing additional copies." (Br. Review Costs at 8.) This argument is baffling. The original copy of a deposition must not be altered or otherwise tampered with. *See* Fed. R. Civ. P. 30(f). Thus, purchasing only one additional copy of each deposition was undoubtedly the most cost-effective approach that Defendants could have employed.

Second, Plaintiffs argue that "COPIC ran up its bill by having each of its law firms buy a transcript" for the depositions taken by Plaintiffs. (Br. Review Costs at 8.) Although Defendants may have shared the same insurance company, they each retained separate counsel. Plaintiffs do not maintain that it was unnecessary for each defendant to obtain a copy of each deposition taken by Plaintiffs—they merely suggest that Defendants should have mitigated their costs by making copies of each other's transcripts. Defendants, however, are not somehow obligated to pool their resources in order to minimize costs that are otherwise necessary. *See*

*also United Transp. Union v. City of Albuquerque,* 352 F. App'x 227, 230-31 (10th Cir. 2009) (obtaining a deposition transcripts from alternative sources, such as the court clerk, is an *alternative* to purchasing a copy from the court reporter). Accordingly, the court affirms the Clerk's cost award to the extent that he authorized costs for multiple copies of depositions transcripts to be provided to parties in the case.

Wherefore, for the foregoing reasons it is

ORDERED that "Plaintiffs' Motion to Set Aside Any Award of Costs" (Doc. No. 315) is DENIED. It is further

ORDERED that "Plaintiffs' Motion to Review Cost Award Amounts" (Doc. No. 313) is GRANTED in part and DENIED in part. The court reduces the Clerk's cost award to Drs. Van Pelt and Long by $548.06 for a total award to Drs. Van Pelt and Long of $13,797.70. The court reduces the Clerk's cost award to Dr. Clark by $442.25 for a total award to Dr. Clark of $15,241.25.

Dated this 7th day of March, 2013.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge